**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| INSURANCE COMPANY OF GREATER | : | CIVIL ACTION NO.: 2:11-cv-01078 |
| NEW YORK a/s/o Five Star Hotels, LLC | : | |
| d/b/a Holiday Inn Parkway East, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| FIRE FIGHTER SALES AND | : | |
| SERVICE CO., | : | |
| | : | |
| Defendant. | : | |

---

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

This is a subrogation action arising from extensive water loss damage that occurred on

December 24, 2008 at the Holiday Inn Parkway East hotel (hereinafter "Hotel") operated by Five

Star Hotels, LLC ("Five Star").  The loss resulted from the failure of multiple components within

the two sprinkler system riser assemblies due to freezing, resulting in the discharge of copious

amounts of water.  The failure of the components of the sprinkler system riser assemblies was

caused by Defendant Fire Fighter Sales and Service Co.'s ("Fire Fighter") improper design and

installation of an automatic fire sprinkler system.  In its Second Amended Complaint, Plaintiff

Insurance Company of Greater New York a/s/o Five Star Hotels, LLC d/b/a Holiday Inn

Parkway East ( hereinafter "INSCO") has asserted two causes of action:  Negligence (Count I)

and Breach of Contract (Count II).

Defendant Fire Fighter has now filed a Motion for summary judgment contending that

there are no genuine issues of material fact entitling it to judgment as a matter of law.  In support

of its Motion, Defendant relies upon, in part, on inadmissible evidence[1], misstatements of fact and counsel's argument.  Defendant also seeks to have this Honorable Court weigh the evidence and determine the truth of the matter which is not the Court's function in determining the existence of a genuine issue of material fact.  In deciding Defendant Fire Fighter's Motion for summary judgment, the Court must take the facts in the light most favorable to Plaintiff as the non-moving party and must draw all reasonable inferences and resolve all doubts in Plaintiff's favor.  Relying on admissible evidence, Plaintiff has made a showing sufficient to establish the existence of each element essential to its causes of action for negligence and breach of contract that a reasonable jury could return a verdict for Plaintiff.

**<u>Breach of Contract Claim</u>**

Without any evidentiary support whatsoever, Defendant has taken the odd position that the December 15, 2005 contract is not a contract but rather, as defense counsel characterizes, a "counter-proposal" which "Fire Fighter did not accept and sign."  Contrary to Defendant's baseless assertion, the document itself bears the signatures of Five Star's managing member Ad Dhupar and Defendant Fire Fighter's employee Mike Wessel who also gave sworn testimony that the changes made by Mr. Dhupar were acceptable to Defendant Fire Fighter.  Thus, raising a disputed genuine issue of material fact.  Indeed, Defendant admits as much when it contends that "this Court must look outside of the counter-Proposal to ascertain and give effect to the intent of the contracting parties" which would require the Court to weigh evidence and determine the truth of the matter asserted, a function reserved for the jury.

The contract, on its face, requires that "P.E. Stamped Drawings" will be provided and further references "Engineering Completion."  It is undisputed that "P.E. Stamped Drawings"

---

[1] Plaintiff is filing contemporaneously with its Response to Defendant's Motion for summary judgment a Motion to strike certain statements of fact and exhibits which it contends should be stricken and disregarded by the Court in deciding Defendant's Motion for summary judgment.

were not provided.  Again, Defendant takes the odd position that the "parties never contracted for or agreed to provide P.E. stamped drawings." Relying on inadmissible parole evidence, Defendant claims that the parties to the agreement (which it also contends did not exist), knew that P.E. stamped drawings would only be submitted if required by the authority having jurisdiction.  Contrary to Defendant's assertion, Defendant Fire Fighter's corporate designee and professional licensed engineer, Rick Malady gave sworn testimony that "[i]f engineer stamped drawings are **required contractually**" they will be provided.  Mr. Dhupar also gave sworn testimony that he saw PE stamped drawings and assumed he would receive PE stamped drawings.  Defendant's self-serving and inconsistent positions raise another disputed genuine issue of material fact.

Once again relying, in part, on inadmissible evidence, Defendant contends that there is no casual connection between a breach by Defendant and the loss.  Due to the Court's page limitation and in avoiding trying this case on paper, Plaintiff is restricted in setting forth all of the evidence that demonstrates the causal connection between the various contractual breaches and the loss.  Suffice it to say that a disputed genuine issue of material fact exists where, on the one hand, Plaintiff's expert and Defendant Fire Fighter's engineer Mr. Malady both agree that the sprinkler system which should never have been installed in unheated stairwells resulted in freezing pipes, component failures and the discharge of copious amounts of water.  In contrast, Defendant's expert witness (who disagrees with Defendant's engineer) concludes that the loss was caused by the infiltration of cold air from open doors or operating pressurization fans or both.

**Negligence Claim**

As to Plaintiff's negligence claim, Defendant's assertion that "Rick Malady…Fire Fighter's only professional engineer" was not involved in the sprinkler system project at the Hotel is disputed by Mr. Malady's own sworn testimony that "If engineer stamped drawings are required **contractually**, I'll review it with the designers and provide the stamp."  Because the contract required P.E. stamped drawings, Mr. Malady as the only professional engineer and by his own admission was required to be involved in the project.  Mr. Malady's duty, as he admitted, was to review the drawings with the designers and provide his stamp.  If Defendant continues to maintain that Mr. Malady had no involvement in the design of the sprinkler system, then Defendant has admitted that Mr. Malady breached his duty to Plaintiff in failing to review and approve the sprinkler system design.  Mr. Malady breach of duty resulted in the improper design and installation of a sprinkler system which he himself admits should never have been installed in unheated stairwells.  Thus, either there is a disputed genuine issue of material fact or, Plaintiff, based on Defendant's admission that Mr. Malady was not involved in the project, is entitled to judgment as a matter of law on its professional negligence claim.

Lastly, Defendant cites to no legal authority whatsoever that Plaintiff is required to present it damages through expert testimony.  Moreover, this matter presents numerous unresolved genuine issues of material fact, many of which rest on the credibility of the testimony of witnesses and the opposing opinions of the parties' respective expert witnesses.

## II.    STANDARD OF REVIEW

*Federal Rule of Civil Procedure 56(a)* provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when

there is a genuine issue of material fact.  *Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 247-48

(1986).   In determining whether the dispute is genuine, the court's function is not to weigh the

evidence or to determine the truth of the matter, but only to determine whether the evidence of

record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249.

The court must take the facts in the light most favorable to the non-moving party, and must draw

all reasonable inferences and resolve all doubts in that party's favor.  *High v. Butler County*

*Family YMCA*, 418 F.3d 265, 266 (3rd Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437,

446 (3rd Cir. 2001).

A court must not engage in credibility determinations at the summary judgment stage.

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3rd Cir. 1198).  The

United States Court of Appeals for the Third Circuit has stated:

> [I]f there is a chance that a reasonable factfinder would not accept
> a moving party's necessary propositions of fact, pre-trial judgment
> cannot be granted. Specious objections will not, of course, defeat a
> motion   for   summary   judgment, **but real questions about
> credibility, gaps in the evidence, and doubts as to the
> sufficiency of the movant's proof, will**.

Id. (emphasis added).  The court may consider material evidence that would be admissible or

usable at trial in deciding the merits of a motion for summary judgment.  *Horta v. Sullivan,* 4

F.3d 2, 8 (1st Cir. 1993) (*citing* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, Federal Practice and Procedure § 2721, at 40 (2d ed. 1983)); *Pollack v. Newark,* 147

F. Supp. 35, 39 *(D.N.J. 1956)*, aff'd, 248 F.2d 543 (3d Cir. 1957) ("[I]n considering a motion for

summary judgment, the court is entitled to consider exhibits and other papers that have been

identified by affidavit or otherwise made admissible in evidence.").

### III.    ARGUMENT

**A.    Plaintiff's Professional Negligence Claim Presents Numerous Disputed Material Facts Warranting Denial of Summary Judgment**

*1.    Defendant's professional engineer, Richard Malady's conduct fell below the applicable standard of care.*

To prevail in any negligence action in Pennsylvania, the plaintiff must establish the following elements: (1) defendant owed plaintiff a duty; (2) defendant breached the duty; (3) the plaintiff suffered actual harm; and (4) a causal relationship existed between the breach of duty and the harm. *Merlini v. Gallitzin Water Auth.*, 2007 PA Super 274, 934 A.2d 100, 104 (Pa. Super. 2007). In a professional negligence action, the determination of whether there was a breach of duty requires the plaintiff to additionally show that the defendant's conduct fell below the relevant standard of care applicable to the rendition of the professional services at issue. *Id.* Plaintiff relies on the material facts in dispute set forth in paragraphs 31, 46-51, in Defendant's Concise Statement of Material Facts for sections A, subheadings 1 and 2.

It is undisputed that that Rick Malady was the only professional licensed engineer at Defendant Fire Fighter. Defendant Fire Fighter provides engineering services associated with the systems it installs and Mr. Malady is the individual responsible for reviewing drawings and affixing his professional stamp to such drawings. As the professional engineer and Defendant's corporate designee, Mr. Malady gave sworn testimony that **"**If engineer stamped drawings are **required contractually,** I'll review it with the designers and provide the stamp."

The contract at issue in this case required that P.E. stamped drawings be provided. Consequently, because there was a contractual requirement for engineer stamped drawings which only Mr. Malady could provide as the sole professional licensed engineer, Mr. Malady was required to be involved in the design of the automatic sprinkler system to be installed at the

hotel.  By his own admission, Mr. Malady had the professional duty to review the designs for the installation of the automatic sprinkler system at the hotel and affix his professional stamp to the drawings.  Defendant Fire Fighter asserts that Mr. Malady was **not** involved in the design of the sprinkler system at the hotel.  (Def.'s Memo. p. 5).

According to Defendant's legal authority, "[i]n order to establish a claim for professional negligence under Pennsylvania law a plaintiff must demonstrate three basic elements:  (1) employment of the professional or other basis for duty; (2) failure of the professional to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the damages to plaintiff." (Citation omitted).  (Def.'s Memo, p. 4).  Applying these elements to the evidence of record, Plaintiff can establish at trial that:  (1)  Mr. Malady had a duty to review the designs with the designers and affix his professional stamp to the drawings; (2) Defendant's admission that Mr. Malady did not review the drawings with his designers thus admitting to having failed to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the damages because Mr. Malady admitted that you cannot connect a sprinkler system to a standpipe located in an unheated stairwell and subject to freezing.  Had Mr. Malady reviewed the drawings with his designers, Defendant would not have been permitted to install a sprinkler system to a standpipe in an unheated stairwell and the loss would not have occurred.

Moreover, Mr. Malady admits he was physically present at the Hotel half-way through the installation of the sprinkler system, walked through one of the unheated stairwells and checked on "how the guys were doing."  Thus, Mr. Malady who was fully aware that a sprinkler system, a life saving system, was being installed at a hotel and with his knowledge that such system cannot be installed in unheated stairwells took no action whatsoever.  Negligence is not only an affirmative act but also an act of omission.  Had Mr. Malady exercised ordinary skill and

7

knowledge, he could have taken action prior to the completion of the sprinkler system installation.  This breach of Mr. Malady's professional duty as an engineer resulted in the improper installation of the subject sprinkler system and the ensuing loss to Plaintiff  on December 24, 2008.  Although Mr. Malady now denies any involvement in the design and installation of the subject sprinkler system, such self-serving testimony presents an issue of credibility, which is a matter reserved for the trier of fact.  *Buffington v. PEC Mgmt. II, LLP*, 2014 U.S. Dist. LEXIS 76943, at *18 (W.D. Pa. 2014) (Cohill, J.).

Defendant also contends that there is no evidence that Five Star had an expectation that a professional engineer would be involved in job.  (Def.'s Memo. p. 5).  However, contrary to Defendant's claim, Mr. Dhupar testified that he assumed he would receive P.E. stamped drawings as provided by the contract.  As such, Mr. Malady owed an independent professional duty to the Hotel, as he admits, to review the drawings with his designers before affixing his seal, which duty, based on Defendant's admission of "no involvement," Mr Malady breached.

As to Defendant Fire Fighter's claim that Plaintiff's professional negligence claim is barred by the Gist of the Action, such assertion ignores well-settled Pennsylvania law. Pennsylvania courts have held that it is the contract between the plaintiff and the professional that establishes a claim stating that "[t]he duty of care in a professional negligence action stems from the parties' relationship.  'The Pennsylvania Supreme Court requires privity between a plaintiff and a [professional] to maintain a professional negligence action."  *Brandow Chrysler Jeep Co. v. DataScan Techs.*, 511 F. Supp. 2d 529, 538 (E.D. Pa. 2007) *citing Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates.*, 39 F. Supp. 2d 517, 523 (M.D. Pa. 1999).  As such, Pennsylvania courts have long permitted plaintiffs to bring suits against professionals in both contract and tort.  *See Gorski v. Smith*, 812 A.2d 683 (Pa Super. 2002)

8

(breach of contract and negligence claims may be made against attorney whose rendering of professional services did not comport with standards expected in the profession). *See also Greenwood Land Company v. Omnicare, Inc.,* 2011 U.S. Dist. LEXIS 767, *10 (W.D. Pa. 2011)(Cercone, J.) *citing Rapidgm v. ATM Mgmt. Serv. LLC,* 63 Pa. D. & C. 4th 234, 240-241 (Pa. Com. Pl. 2003)("No Pennsylvania courts have applied any of the doctrines barring tort recovery in relationships arising out of a contract (including the gist of the action doctrine), to claims involving a professional's failure to exercise the proper standard of care.")

Defendant's contention that because a professional engineer was not involved, despite promising one's involvement, there can be no professional negligence is incredible. Indeed validating such a defense would upend the law of professional negligence. For instance, if an attorney fails to supervise and/or review the drafting of deeds, under Defendant's logic that attorney could assert she was not involved and thus has no liability to the client who now has lost her property due to a defective deed. Here, Mr. Malady himself identified his duty which was to review the work of his designers and provide his stamp of approval.

Lastly, Defendant's argument as to the lack of a legal or regulatory duty is not relevant to this action. The Hotel contracted for the services of a professional engineer, was charged for engineering services and expected to receive such services. Because Mr. Malady chose to not be involved, negligence by omission, a catastrophic property loss occurred and thankfully the sprinkler system failed at a time when it was not needed to save lives during a fire.

**2.    *Plaintiff's liability expert, Timothy McGreal, will testify that Mr. Malady's conduct fell below the standard of care for a professional engineer.***

Defendant affirmatively asserts that this Honorable Court has precluded Mr. McGreal from testifying that Mr. Malady breached the standard of care of a professional engineer which

it knows to be untrue as evidenced by the Court's hearing transcript and by the fact that Defendant knowing the falsity of its assertion then back peddles by stating that "[e]ven if McGreal had not been precluded by the Court…."  (Def.'s Memo, pp. 7-8).  This Honorable Court has permitted Mr. McGreal "to testify to what a professional engineer would have done when these drawings were reviewed." (6/19/14 Transcript, p. 63, Doc. 136).  The Court only limited Mr. McGreal from testifying "that a professional engineer working for a company has a duty to investigate all of the projects or even if they go on site has a duty as the professional engineer to oversee things and make changes." (Id.)

Mr. McGreal, a professional engineer in his own right and as fully addressed in his expert report will testify at trial as to not only the standard of care for a professional engineer but will also opine as to the manner in which Mr. Malady breached that standard of care as it relates to the subject matter of the design and installation of the sprinkler system at this Hotel. More specifically, it is anticipated that Mr. McGreal will testify consistent with his deposition testimony and his report that Mr. Malady did not oversee the design and installation of the sprinkler system, he did not review or stamp the drawings, and he did not determine if the stairwells had adequate heat among other breaches of professional duty.

Mr. McGreal does not opine as to Mr. Malady's responsibilities as an owner of Defendant, nor does he opine that Mr. Malady had a duty to be personally involved in every design and installation performed by Defendant as Defendant represents.  Mr. McGreal's opinions relate solely to Mr. Malady's independent duty in the design and installation of the subject sprinkler system.  As noted above, because the level of Mr. Malady's independent duty as Mr. Malady himself has identified (i.e. reviewing drawings with his designers) as it relates to Defendant's design and installation of the subject sprinkler system presents a disputed issue of

material fact inappropriate for resolution on summary judgment where the Court cannot weigh evidence, determine the truth of the matter and is required to take the facts in the light most favorable to Plaintiff as the non-moving party and must draw all reasonable inferences and resolve all doubts in Plaintiff's favor.

**B.    Plaintiff Has Established A Prima Facie Case Of Breach Of Contract, Rendering Summary Judgment Is Inappropriate**

*1.    Plaintiff's contract with Defendant was valid and enforceable.*

To prove a breach of contract claim under Pennsylvania law, a plaintiff must demonstrate: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 625 (W.D. Pa. 2013)(Flowers Conti, J.).  An enforceable contract exists when the parties to the contract: (1) reach a mutual understanding; (2) exchange consideration; and (3) delineate the terms of their bargain with sufficient clarity.  *Weaverton Transp. Leasing v. Moran*, 2003 PA Super 385, 834 A.2d 1169, 1172 (Pa. Super. 2003).  The first element, mutual understanding and manifestation of intent, is generally established through offer and acceptance. *Jenkins v. Cnty. Of Schuylkill*, 441 Pa. Super. 642, 658 A.2d 380, 383 (Pa. Super. 1995).  In ascertaining the intent of the parties to contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter.  *Id.* at 483.  The intentions of contracting parties are generally for the trier of fact to determine.  *Landan v. Wal-Mart Stores, Inc.*, 2013 U.S. Dist. LEXIS 110000, at *12 (W.D. Pa. 2013) (Cercone, J.) (*citing Melo-Sonics Corp. v. Cropp*, 342 F.2d 856, 859 (3d Cir. 1965)).  Plaintiff relies on the material facts in dispute set forth in paragraphs 9, 11, 21-30, 32-34, 61, 65, 70-71, 79-81, 83-84, 86, 88-90, 93-97, 101-02, 117, 119-20, 123-24 in Defendant's Concise Statement of Material Facts in Section B, subheadings 1 through 3.

Instantly, Plaintiff has established a *prima facie* case of breach of contract under Pennsylvania law.  The evidence in this matter supports the conclusion that, on December 15, 2005, Plaintiff and Defendant reached a mutual understanding via a formal proposal that, in exchange for $178,000, Defendant was to install a sprinkler system in the Hotel.  It was further agreed that Defendant would install a sprinkler system that was in accordance with required state and local codes and that Defendant would provide P.E. stamped drawings, as well as shop drawings with all conventions, abbreviations and specified terminology.  Defendant now inexplicably denies that a contract was created on December 15, 2005 and characterizes the contract as a "counter-Proposal" claiming that Defendant Fire Fighter did not accept or sign this "counter-Proposal."  Such claim disregards the document itself which bears the signatures of Defendant's employee Mike Wessel and Mr. Wessel's sworn testimony that he reviewed the proposal with Mr. Dhupar in person, that Mr. Dhupar made some handwritten changes to the proposal and Mr. Dhupar's changes to the proposal were acceptable to Defendant Fire Fighter.  Further, it is undisputed that Defendant subsequently installed a sprinkler system albeit improperly at the Hotel.  Therefore, through their "outward manifestations of assent," Defendant entered into a valid and enforceable written contract with Five Star.

The fact that the December 15, 2005 contract contains a provision that a formal contract was to be submitted "ASAP" is immaterial to the analysis of the validity of Five Star's contract with Defendant.  It is well settled Pennsylvania law that where the parties have agreed on the essential terms and the only remaining act to be done is the formalization of the agreement, the latter will not prevent the contract from being enforceable.  *Landan,* 2013 U.S. Dist. LEXIS 110000, at *11 (*citing Field v. Golden Triangle Broadcasting, Inc.*, 451 305 A.2d 689, 693 (Pa. 1973); *Melo-Sonics Corp. v. Cropp*, 342 F.2d 856, 859-860 (3d Cir. 1965)).  Although the

12

contract was signed, as a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties. *Id.* at 12. Thus, the fact that the December 15, 2014 contract was never put into a more formal document is of no consequence to this matter. *See Landan*, *supra*, at *11 (explaining that Section 26 of the Restatement of Contracts specifically recognizes that "parties may bind themselves contractually although they intend, at some later date, to draft a more formal document"). Defendant, however, argues intent of the parties which defeats its request for summary judgment since intent is an issue to be decided by the trier of fact and not through the vehicle of a summary judgment motion.

2.    ***Defendant was required to provide P.E. Stamped Drawings under the express terms of the contract.***

Defendant, through its "outward manifestations of intent" accepted the terms of the December 15, 2005 contract, including the term drafted by Defendant which requires Defendant to provide P.E. stamped drawings. Therefore, Defendant's failure to provide P.E. stamped drawings to Plaintiff was a breach of the December 15, 2005 contract. *See Widmer Eng'g, Inc. v. Dufalla*, 2003 PA Super 391, 837 A.2d 459, 467 (Pa. Super. 2003) (*citing Restatement (Second) of Contracts* §235(2) (1981)) (stating that, under Pennsylvania law, "[w]hen performance of a duty under a contract is due, any nonperformance is a breach"). Now, despite the fact that the provision of P.E. stamped drawings was required by the express terms of the December 15, 2015 contract, Defendant argues that the parties never intended this to be a material term of same. In support of this contention, Defendant cites to the self-serving testimony of its employees, Mike Wessel, Richard Malady and Jeff Hughes for the proposition that the "offer to provide P.E. stamped drawings was a conditional term in the Proposal to be activated only if the AHJ required P.E. stamped drawings."

There is no question that the contract on its face does not provide any type of caveat that P.E. stamped drawings are conditional based on AHJ requirements.  Indeed, Defendant, relying upon inadmissible hearsay and parole evidence, asserts that "'P.E. stamped drawings' was a boilerplate term put on proposals in case P.E. stamped drawings would be required by the AHJ" and it "was a conditional term in the Proposal to be activated only if the AHJ required P.E. stamped drawings."  Plaintiff's dispute Defendant's claim that Mr. Dhupar was advised of this condition.  Indeed, Mr. Dhupar had no recollection of Mr. Wessel advising him of this condition.

As Defendant acknowledges, that "[w]hen a writing is clear and unequivocal, its meaning must be determined by its contents alone." (Citation omitted).  (Def.'s Memo. p. 10).  Defendant also acknowledges that "[t]he parole evidence rule precludes introduction of parole evidence when both parties intended the writing to represent the definite and complete statement of their agreement."  (Citation omitted) (Def.'s Memo. p. 10).  Adding to Defendant's analysis, in ascertaining the intent of the parties to contract, it is their outward and objective manifestations of assent, as opposed to their *undisclosed and subjective intentions,* that matter.  *Ingrassia Construction Co., Inc. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984).  Thus, what Defendant now believes or proclaims as to when P.E. stamped drawings are provided simply does not matter and cannot be resolved by parole evidence particularly where it was Defendant who drafted the contract.  Contrary to Defendant's assertion, Defendant Fire Fighter may have known that it would only provide P.E. stamped drawings if required by the AHJ but such condition was not set forth in writing on the proposal and no evidence establishing that Mr. Dhupar knew.  Indeed, Mr. Dhupar testified that he assumed he would receive P.E. stamped drawings and its undisputed that no such drawings were ever provided.

3.      *Defendant's breach of the December 15, 2005 contract caused the*
*December 24, 2008 loss and resulting damages.*

The issue of whether Defendant's breach of the December 15, 2005 contract caused the

damages incurred by Plaintiff also presents numerous issues of fact, which renders same

inappropriate for summary judgment.  The December 15, 2005 contract required Defendant to

provide, *inter alia,* PE stamped Drawings, and that the design and installation of the sprinkler

system be in accordance with all applicable codes.  In a Pennsylvania breach of contract action, a

prevailing party is "entitled to recover whatever damages it suffered, provided they would

naturally and ordinarily result from such a breach, or the damages were reasonably foreseeable

and within the contemplation of the parties at the time of contracting and can be proven with

reasonable certainty." *Edwards v. Wyatt*, 330 Fed. Appx. 342, 348 (3d Cir. 2009).

Under Pennsylvania law, automatic sprinkler systems must be maintained in accordance

with The National Fire Protection Association Code 13A, 1981 Edition ("NFPA 13").  34 Pa.

Code § 50.72.  Specifically, NFPA 13 requires that "[w]hen portions of systems subject to

freezing and temperatures cannot be **reliably** maintained at or above 40 [degrees] F …sprinklers

shall be installed as a dry-pipe or preaction system in such areas…."  It is undisputed that the

Defendant installed the sprinkler system in unheated stairwells.  Plaintiff's expert Mr. McGreal's

opinion is that the loss was the result of, *inter alia,* Defendant Fire Fighter's failure to perform

the installation in accordance with the contract, manufacturer's recommendation, design

specifications and required state and local codes.  Further, Mr. Malady, the corporate designee

and professional licensed engineer for Defendant Fire Fighter, testified that under NFPA 13, wet

standpipe systems are not to be placed in unheated areas and cannot be installed in an area that's

exposed to below 40 degrees for an extensive period and be within code.  Mr. Malady also

admitted that you cannot put a sprinkler system to a wet standpipe system in an unheated area

and used the words "No.  It is unacceptable --."  Mr. Malady further admitted that if a wet standpipe system was in a stairwell that is not heated and subject to freezing, Defendant would not connect a sprinkler system in that standpipe.  Mr. Malady concluded that the standpipe froze because it was below 32 degrees for an extended period of time, stating, "there is no other option."

It was also foreseeable that the loss would eventually occur at the time the sprinkler system was designed.  Defendant's employee Mr. Hughes testified that he did not investigate to determine whether or not the stairwells could be maintained above 40 degrees or if cold air infiltration was occurring.  He also testified that he "mentioned to [Zandier] that it felt cold in the stair tower, and [he] didn't see any heat device in the stair tower."  Mr. Hughes further testified that he placed a notation on the drawing "OWNER TO PROVIDE HEAT IN AREAS SUBJECT TO FREEZING CONDITIONS" because he "thought the stair towers were going to be cold at some point in time, " and the stair towers "felt cold when [he] was doing [his] design.  Mr. Hughes admitted that he put the notation on the drawing to cover himself.

Because of Mr. Malady's breach of duty in failing to review the drawings prepared by Mr. Hughes and approving his design to provide the P.E. stamped drawing the contract required and because the design was not in accordance with NFPA 13 as also required by the contract, the very concern that Mr. Hughes had with a pipe freeze eventually did occur on December 24, 2008, resulting in a catastrophic loss.

Notably, Defendant once again asserts the faulty argument that because Defendant did not connect anything physically or mechanically to the existing Pittsburgh standpipe, the December 24, 2008 loss cannot be related to their installation or design.  However, Mr. McGreal has previously explained that, "[t]his is a fire sprinkler system, so the pressure that's being

delivered to the system is being delivered **throughout the system.  They're not discrete**

**components.  They're not separate from each other.  They are connected as a system."**

Therefore, despite Defendant's protestations, the fact remains that the sprinkler system that

Defendant designed was one, uniform system and that this system failed.

Further, there is a genuine dispute as to the cause of the loss.  Plaintiff's expert and

Defendant Fire Fighter's engineer Mr. Malady both agree that the sprinkler system which should

never have been installed in unheated stairwells resulted in freezing pipes, component failures

and the discharge of copious amounts of water.  In contrast, Defendant's expert witness (who

disagrees with Defendant's engineer) concludes that the loss was caused by the infiltration of

cold air from open doors or operating pressurization fans or both.  Thus, it is for the jury to

determine the cause of the loss as the trier of fact warranting the denial of summary judgment on

this issue.

        C.        **Plaintiff Can Establish Its Damages With More Than Reasonable Certainty**

Although Defendant contends, without any legal authority whatsoever, that Plaintiff is

not entitled to present its claim for damages at trial without expert opinion, expert testimony is

not required to establish a plaintiff's damages.  *See Mass. Bonding & Ins. Co. v. Johnston &*

*Harder, Inc.*, 22 A.3d 709, 714 (Pa. 1941) (where there is no other "reasonably safe basis" for

measuring damages, expert testimony, "if obtainable," may be utilized for that purpose); *see e.g.,*

*Ware v. Rodale Press, Inc.*, 322 F.3d 218, 226 (3d Cir. 2003) (holding that Plaintiff provided

supporting documentation <u>or</u> expert reports or analysis to support its damages calculations).

Pennsylvania law provides that a prevailing party in a breach of contract action may recover

those damages that can be proven with "reasonable certainty."  *Edwards*, *supra*, at 348.

17

"Reasonable certainty embraces a rough calculation that is not too speculative, vague or contingent upon some unknown factor." *Id.* Furthermore:

> Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. **The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.**

*Id.* (*citing Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 2007 PA Super 351, 937 A.2d 503, 514 (Pa. Super. 2007)). Therefore, absolute precision is not required. *Id.* Further, any doubts as to the validity of a party's damages are to be resolved against the party in breach. *Id.* As to Plaintiff's claim for professional negligence, the measure of damages for injury to property is the cost of repairs to the property unless such cost is equal to or exceeds the value of the injured property. Where the cost of repair does exceed the value of said property, the cost of damages becomes the value of the property. *Kirkbride v. Lisbon Contractors*, 385 Pa. Super. 292, 298-99 (Pa. Super. 1989).

Plaintiff has provided to Defendant both "relevant data" and "direct and positive proof" of Plaintiff's damages and should be able to present same to the jury at trial. Furthermore, even if Plaintiff had presented no documentation in support of its claim for damages, which is expressly denied, Plaintiff would still be entitled to an award of nominal damages upon the entry of a jury verdict in its favor. *Norfolk Southern Railway Co. v. Pittsburgh & West Virginia Railroad*, 2014 U.S. Dist. LEXIS 83209, at *60 (W.D. Pa. 2014) (McVerry, J.) (holding that if a party is able to prove breach of contract, but can show no damages flowing from the breach, the party is still entitled to recover nominal damages). Therefore, the issue of Plaintiff's damages presents a genuine issue of material fact that cannot be resolved by this Honorable Court and

Defendant's Motion should be denied. *Id.* ("[a] grant of summary judgment on the sole basis of absence of provable damages . . . is generally improper").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Insurance Company of Greater New York a/s/o Five Star Hotels, LLC d/b/a Holiday Inn Parkway East respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

  s/Veronica W. Saltz
Veronica W. Saltz, Esquire
Attorney I.D. No.: 52931
SALTZ MATKOV P.C.
998 Old Eagle School Road, Suite 1206
Wayne, PA 19087
(610) 964-3333

Attorney for Plaintiff
Insurance Company of Greater New York a/s/o Five
Star Hotels, LLC d/b/a Holiday Inn Parkway East

Dated:  September 5, 2014

<u>**CERTIFICATE OF SERVICE**</u>

I, Veronica W. Saltz, Esquire, attorney for Insurance Company of Greater New York,

a/s/o Five Star Hotels, LLC d/b/a Holiday Inn Parkway East do hereby certify that on September

5, 2014, I caused a true and correct copy of the foregoing *Plaintiff's Memorandum of Law In*

*Opposition To Defendant's Motion For Summary Judgment* to be filed via the Official Court

Electronic Document Filing System, and that said documents are therefore available for viewing

and downloading from the ECF system.  By virtue of this filing, service upon the following

counsel, being Electronic Case Filing Users, is complete upon counsels' receipt of the Court's e-

mail notification of the Notice of Electronic Filing addressed as follows:

John A. Robb, Jr., Esquire
Robb Leonard Mulvihill LLP
500 Grant St., 23rd Floor
Pittsburgh, PA 15219
E-mail: jrobb@rlmlawfirm.com


s/Veronica W. Saltz
Veronica W. Saltz, Esquire