IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INSURANCE COMPANY OF GREATER NEW YORK, as subrogee of Five Star Hotels, LLC d/b/a Holiday Inn Parkway East,<br><br>Plaintiff,<br>v.<br><br>FIRE FIGHTER SALES & SERVICE CO.,<br><br>Defendant. | Civil Action No. 2:11-1078 |

# OPINION

**Conti, Chief District Judge**

## I. Introduction

Pending before the court are motions for reconsideration filed by both Fire Fighter Sales & Service ("Fire Fighter") (ECF No. 178) and Insurance Company of Greater New York ("GNY") (ECF No. 183). Both motions challenge rulings made by this court in a memorandum opinion issued on February 20, 2015 ("Memorandum Opinion") (ECF No. 174) in which the court granted in part and denied in part Fire Fighter's motion for summary judgment (ECF No. 139).

The underlying action involves water damage sustained by a hotel insured by GNY when a water-filled standpipe froze and burst. GNY was subrogated to the rights of its insured and alleges that the incident occurred as the result of a sprinkler system designed and installed in the hotel by Fire Fighter. GNY's second amended complaint asserted claims of breach of contract and professional negligence against Fire Fighter based on the incident.

1

In its Memorandum Opinion, the court granted summary judgment in favor of Fire Fighter with respect to GNY's professional negligence claim after concluding that a professional engineer did not have any role in the design or installation of the sprinkler system at issue. (Memorandum Opinion (ECF No. 174) at 20-21.) The court denied Fire Fighter's summary judgment motion with respect to GNY's breach of contract claim, concluding that there were disputed issues of material fact with respect to causation and the existence and terms of an alleged written contract. (Id. at 13-14). The court also rejected Fire Fighter's argument that GNY could not establish damages because it had failed to adduce expert testimony to support its claim. (Id. at 16.)

For the reasons set forth below, Fire Fighter's motion for reconsideration will be granted in part and denied in part. GNY's motion for reconsideration will be denied.

## II. Standard of Review

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999). A motion for reconsideration under Federal Rule of Civil Procedure 59(e) must therefore rely on one of three grounds: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). A motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already rightly or wrongly made. Williams v. Pittsburgh, 32 F.Supp.2d 236, 238 (W.D.Pa. 1998). Litigants are cautioned to "'evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.'" Waye v. First Citizen's Nat'l Bank, 846 F.Supp. 310, 314 n.3 (M.D.Pa. 1994) (quoting Atkins v. Marathon

LeTourneau Co., 130 F.R.D. 625, 626 (S.D. Miss. 1990). Motions for reconsideration should not relitigate issues already resolved by the court and should not be used to advance additional arguments which could have been made by the movant before judgment. Reich v. Compton, 834 F.Supp. 753, 755 (E.D.Pa. 1993) *aff'd in part*, *rev'd in part*, 57 F.3d 270 (3d Cir. 1995).

**III.    Discussion**

   **A. Fire Fighter's Motion for Reconsideration**

Fire Fighter's motion for reconsideration is premised on a need to correct clear errors of fact or law contained in the memorandum opinion. In its summary judgment motion, Fire Fighter attacked GNY's breach of contract claim by arguing that, even if a written contract existed and was breached, there was no causal connection between the alleged breaches and the damage ultimately sustained by the hotel. (ECF No. 140 at 15-18.) Fire Fighter's brief focused almost entirely on the fact that the sprinkler system had been physically connected to a different standpipe than the one that froze and broke. (Id. at 16-18.) Fire Fighter relied heavily on an expert report in which Dr. David Bizzak ("Dr. Bizzak") opined that no portion of the sprinkler system installed by Fire Fighter had played a role in the freezing incident. (Report of Dr. David Bizzak ("Bizzak Report") (ECF No. 142-16) at 14-15.) Instead, Dr. Bizzak attributed the incident entirely to the infiltration of cold air into the stairwells as a result of the stairwell doors being left open or faulty operation of the pressurization fans in the stairwell, or both. (Id. at 15-16.)

In contrast, GNY's expert, Timothy McGreal, authored a report attributing the freezing incident to Fire Fighter's failure to ensure that the sprinkler system would be located in an area with an adequate and reliable heat source. (Report of Timothy McGreal ("McGreal Report") (ECF No. 147-8) at 12.) The court summarized McGreal's findings as follows:

> McGreal, on the other hand, attributed the frozen standpipe to Fire Fighter's negligence in failing to verify that the sprinkler system would be located in an area with an adequate and reliable heat source. (Report of Timothy McGreal ("McGreal Report") (ECF No. 147-8) at 12.) According to McGreal, applicable state and local codes require that all portions of a "wet" sprinkler system, such as that installed by Fire Fighter, must be located in areas that are maintained at or above 40 degrees Fahrenheit. (Id. at 9-10.) Malady, the only professional engineer employed by Fire Fighter, acknowledged that a wet sprinkler system should not be installed in an unheated area or an area that would be exposed to temperatures below 40 degrees. (Malady Depo. (ECF No. 147-3) at 50, 147.) McGreal opined that the incident would not have occurred if Fire Fighter had complied with applicable codes and/or if Malady had carefully reviewed the drawings. (McGreal Report (ECF No. 147-8) at 12.) McGreal also opined that the standpipe would not have frozen in the absence of the sprinkler system because the installation process caused entrapped air to be removed from the system, leaving the water in the pipe with no room to expand upon freezing. (Id. at 11.) Finally, McGreal dismissed Fire Fighter's contention that its negligence could not have caused the accident because it never physically altered the Pittsburgh standpipe. (McGreal Depo. (ECF No. 142-4) at 113-14.) To the contrary, McGreal noted that the two standpipes were not distinct components, but parts of a single comprehensive system with water pressure delivered throughout. (Id.)

(Memorandum Opinion (ECF No. 174) at 14-15.) The court ultimately concluded that the opinions offered by the parties' competing experts created a triable issue of fact as to causation. (Id. at 15).

In the instant motion, Fire Fighter primarily challenges the court's reference to McGreal's "entrapped air" theory. At a Daubert hearing held on June 19, 2014, the court held, *inter alia*, that McGreal's entrapped air theory lacked foundation and did not go to the ultimate question of what caused the pipe to freeze. (ECF No. 136 at 46-55.) Fire Fighter contends that it was clear error for the court to rely on this "previously excluded expert opinion" to deny its motion for summary judgment. (Defendant's Brief in Support (ECF No. 179) at 2). In light of the ruling at the Daubert hearing, the court agrees that the reference to the entrapped air theory must be stricken from the memorandum opinion. However, in light of the applicable standard

4

governing motions for summary judgment and the evidence adduced by GNY, the deletion of the inadvertent reference to the entrapped air theory does not automatically warrant summary judgment in favor of Fire Fighter.

The court in its opinion granting in part and denying in part Fire Fighter's motion for summary judgment held there was ample evidence from which a trier of fact could conclude that a contract existed between Fire Fighter and Five Star, i.e., the December 15 Proposal. The court concluded there was evidence sufficient for the trier of fact to conclude Fire Fighter breached the contract in, among other ways, (1) installing an automatic fire sprinkler system that was not in accordance with required state and local codes and (2) failing to provide drawings stamped by a professional engineer ("PE stamped drawings"). According to Fire Fighter, McGreal used the trapped air theory to connect the alleged breaches of the contract to the loss sustained in this case, i.e., Five Star relied upon McGreal's testimony with respect to the trapped air theory to prove Fire Fighter's breach of the contract *caused* Five Star's damages. Viewing the evidence in the light most favorable to GNY—the nonmoving party—and drawing all reasonable inferences in its favor, there is sufficient evidence of record—even without considering the entrapped air theory—from which the trier of fact could conclude Fire Fighter's breach of the contract caused the damage in this case. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007).

It is undisputed that the pipes froze because they were exposed to temperatures of thirty-two degrees or lower for a prolonged period of time. As the court indicated at the Daubert hearing in this case, the issue with respect to causation is what caused the pipes to be exposed to temperatures of thirty-two degrees or lower for a prolonged period of time. Five Star argues Fire Fighter's breach of the contractual provision to (1) comply state and local codes and (2) provide documents stamped by a professional engineer caused the damage in this case. With respect to

the first argument, the code relied upon by Five Star, i.e., NFPA-13, 1983 Edition, Section 3-10.1.1, provided: "When portions of systems are subject to freezing and temperatures cannot be reliably maintained at or above 40°F (4°C) sprinklers shall be installed as dry-pipe or a preaction system in such areas." (ECF No. 147-8 at 11.) Five Star argues that the stairwells in the hotel were subject to freezing and the temperatures could not be reliably maintained at or above forty degrees Farenheit, and, therefore, Fire Fighter's installation of the sprinkler system—which was not dry-pipe or a preaction system—in the stairwell of the hotel violated NFPA-13, and, but for the violation, the damage would not have occurred in this case. The court at the Daubert hearing held McGreal at trial can testify about NFPA-13 provision and the implications of that provision. The court explained, however, that McGreal, who did not perform a thermal analysis of the hotel to determine whether the heat in the rooms adjacent to the stairwells provided heat to the stairwells, cannot testify that Fire Fighter violated NFPA-13 provision when it installed the sprinkler system; rather, whether Fire Fighter violated that code provision is an issue for the jury to decide. ((H.T. 6/19/15 (ECF No. 136) at 66-67); (ECF No. 131-3 at 15).)

Viewing the evidence in the light most favorable to GNY and drawing all reasonable inferences in its favor, there is sufficient evidence of a record from which a reasonable juror could find the stairwells at the time the sprinkler system was installed were not heated, and, therefore, the pipes were subject to freezing and could not be reliably maintained at or above forty degrees Fahrenheit. In other words, there is sufficient evidence of record for a reasonable juror to find that Fire Fighter violated NFPA-13 *and* the parties' contract when it installed the sprinkler system in an area where portions of the sprinkler system were subject to freezing and temperatures could not be reliably maintained at or above forty degrees Fahrenheit. Malady testified that the pipes froze because they were exposed to temperatures of thirty-two degrees

6

Fahrenheit or lower for an extended period of time. (ECF No. 147-3 at 12.) Fire Fighter's designer Jeff Hughes ("Hughes") testified that: prior to the installation of the sprinkler system it felt cold in the stairwell; he did not see any heating devices in the stairwell; and he did not investigate to determine whether or not the stairwells could be maintained above 40 degrees or if cold air infiltration was occurring. (ECF No. 142-12 at 13-14.) Hughes included on his drawings of the sprinkler system a notation that read: "OWNER TO PROVIDE HEAT IN AREAS SUBJECT TO FREEZE CONDITIONS" because it felt cold in the stairwell when he designed the sprinkler system. (ECF No. 142-12 at 19.) Wessel advised Adarsh Dhupar ("Dhupar"), a managing member of Five Star, that he should speak with a heating contractor about putting heat in the stairwells and that Fire Fighter did not do that type of work. (ECF No. 142-5 at 47.) CEC Forensic Engineers investigated the cause of the loss at Five Star's hotel and determined "the cause of the loss was freeze up due to the fact that there was no Freeze protection provided to the sprinkler system (i.e., no heat maintained in the stairwells)." (ECF No. 142-29 at 3.) Based upon the foregoing evidence viewed in the light most favorable to GNY, a reasonable jury could find that Fire Fighter caused the damage to the hotel because it installed the sprinkler system in violation of the code provision, which prohibited the installation of a wet sprinkler system in an area where it was subject to freezing and could not reliably be maintained at or above forty degrees Fahrenheit.

Fire Fighter at trial will be able to introduce evidence that when it installed the sprinkler system it did not violate NFPA-13 because the stairwells were heated, i.e., the sprinkler system was not subject to freezing and could reliably be maintained at or above forty degrees Fahrenheit. Fire Fighter points to the following as evidence that the stairwell was heated at the time it installed the sprinkler system: (1) a declaration by Dhupar providing that "[a]t all relevant

7

times, the stairwells were heated by passive heat emanating from electrical heaters in nearby guest rooms that were operational at all relevant times." (ECF No. 142-1 ¶ 15.); (2) deposition testimony by Mike Wessel ("Wessel"), a sales representative for Fire Fighter, that Dhupar told Wessel he was an engineer and the stairwells did not need additional heat; (3) deposition testimony by Wessel that Dhupar told Fire Fighter employees that the stairwells had existed with water filled standpipes for a long time and that they would be fine; and (4) Bizzak's opinion that the damage was caused by the infiltration of cold air into the stairwells as a result of the stairwell doors being left open or faulty operation of the pressurization fans in the stairwell, or both. A reasonable juror could find based upon the foregoing evidence that Fire Fighter did not breach the contract and violate NFPA-13 when it installed the sprinkler system because portions of the system were not subject to freezing and could reliably be maintained above forty degrees Fahrenheit, and it was Five Star's maintenance of the stairwell, i.e., leaving the doors open and pressurization fan on, that caused the pipes to be exposed to temperatures of thirty-two degrees Fahrenheit or lower for an extended period of time. Because there is a material dispute of fact with respect to these issues, however, Fire Fighter is not entitled to summary judgment on Five Star's breach of contract claim.

With respect to Five Star's second argument with respect to causation, i.e., the damage was caused by Fire Fighter's breach of the contractual provision to provide PE stamped drawings, at the <u>Daubert</u> hearing, the court made the following observations concerning the causal implications of Fire Fighter's failure to provide PE stamped drawings:

> On the other hand, you do have a contractual obligation according to the evidence that the drawings would have been stamped, and Mr. Malady testified that as a professional engineer he would not have stamped a design if he knew there was not going to be heat for wet pipes. And so, you know, the failure to comply with the contractual provision, if there's

8

> a linkage there, may have been arguably a cause if there was no heat there.
>
> Now, I understand the argument of the Defendant is Mr. Malady said he wouldn't have done it if there was no heat there. In fact, there was heat there. It came from the other side. And then you go back to the battle of the experts and what Mr. Malady is really testifying to. So I think to the extent Mr. McGreal can testify as to a professional engineer, what impact that would have had, the breach of contract, it can come in. And what the duties would be if a professional engineer – you can talk about that, you have the document, and go through those types of – those types of issues.
>
> \* \* \* \* \* \* \*
>
> My conclusion is that . . . it's a breach of contract issue in terms of the testimony of [Mr. McGreal], and that [McGreal] could testify as a professional engineer what would happen if these drawings were reviewed, and that would be regardless of whether Mr. Malady testifies one way and says something else and, you know, explains the – why he said it that way, now is saying it differently. I don't know what the testimony is going to be at trial, but this witness would be able to testify to what a professional engineer would have done when these drawings were reviewed.

(ECF No. 136 at 58, 62-63.)

McGreal opines that Malady, in his role as a professional engineer providing PE stamped drawings, would have been forced to assess the possibility that the pipes might freeze had Malady undertaken the professional review required for the provision of PE stamped drawings. (Id. at 5-7, 12-13.) Malady admitted at deposition that it would be "unacceptable" to attach a sprinkler system to a wet standpipe system without determining whether it is in a heated or unheated area. (ECF No. 142-3 at 33, 50, 58, 147.) As described above, viewing the evidence in the light most favorable to GNY and drawing all reasonable inferences in its favor, there is sufficient evidence of record from which a reasonable juror could conclude Fire Fighter installed the sprinkler system in an area in which it was subject to freezing and could not be reasonably maintained at or above forty degrees Fahrenheit. Accordingly, there is evidence sufficient from

which a reasonable juror could conclude that Fire Fighter's failure to have Malady review the design and provide PE stamped drawings caused the damage to Five Star. In other words, a reasonable juror could find that: (1) the stairwells were unheated; (2) the sprinkler system—if installed—would be subject to freezing and could not be reliably maintained at or above forty degrees Fahrenheit; (3) Malady would not have approved the drawings for the sprinkler system because it would be "unacceptable" to attach a sprinkler system to a wet standpipe system in an unheated area; and (4) Fire Fighter, therefore, would not have installed the sprinkler system, the pipes would not have frozen, and the damage would not have occurred in this case. Based upon the foregoing, there remains a factual disagreement to resolve at trial concerning the causal impact of Fire Fighter's failure to provide PE stamped drawings to Five Star prior to the installation of the sprinkler system at the hotel.

Fire Fighter next contends that the court erred in concluding that GNY could establish its damages at trial without expert testimony. Although Fire Fighter contends that this holding was clearly erroneous, it failed to cite any legal support for this position and relies entirely on the precise same arguments that this court previously rejected. A motion for reconsideration is not a vehicle for a party to simply reargue points of disagreement with the court. Waye, 846 F.Supp. at 314; see Ogden v. Keystone Residence, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002) (explaining that a motion for reconsideration may not be used to reargue issues already argued or relitigate points of disagreement between the litigant and the court).

In summary, Fire Fighter's motion for reconsideration will be granted to the extent that the court's reference to the "entrapped air" theory in the memorandum opinion will be stricken. Upon full reconsideration, however, the parties adduced sufficient evidence to create a triable

issue of fact as to causation with respect to Fire Fighter's failure to comply with the identified code and provide PE stamped drawings.

### B. GWY's Motion for Reconsideration

GNY contends that this court clearly erred in granting summary judgment in favor of Fire Fighter with respect to GNY's professional negligence claim. In reaching its decision, the court observed that "the record clearly establishes that the only professional engineer employed by Fire Fighter never had any role in the design or installation of the sprinkler system at the Hotel." (Memorandum Opinion (ECF No. 174) at 20.) The court noted that, to the extent GNY had any expectation that a professional engineer would be involved, that expectation derived almost entirely from the purported written contract. (Id.) GNY contends that the court arrived at this conclusion by erroneously crediting the "self-serving" testimony of Fire Fighter's professional engineer, Rick Malady, to the effect that he had taken no role in the project. (Plaintiff's Brief in Support (ECF No. 184) at 3.) GNY, however, did not cite any evidence in the record to contradict Malady's deposition testimony or cite any policy or principle – apart from the disputed contract – that would have required Malady to be involved. Instead, GNY reasserts the same arguments that it raised at summary judgment in an attempt to convince the court to change its mind. Requests for a "second bite of the apple" are not an appropriate basis for relief on a motion for reconsideration. See, e.g., Boone v. Daughtery, No. 12-1333, 2013 WL 5836329, at *1 (W.D. Pa. Oct. 30, 2013) ("Motions for reconsideration are not designed to provide litigants with a second bite at the apple.") (citing Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995)). GNY's motion must be denied.

### IV. Conclusion

For all the foregoing reasons, plaintiff's motion for reconsideration (ECF No. 183) will be DENIED. Defendant's motion for reconsideration (ECF No. 178) will be GRANTED IN PART AND DENIED IN PART.

An appropriate order and amended memorandum opinion deleting the reference to the entrapped air theory will be entered. In all other respects, the order entered February 20, 2015 (ECF No. 175), will remain in full force and effect.

By the court:

Dated: July 27, 2015

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge