**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| INS. CO. OF GREATER N.Y., | ) | |
| *as subrogee of Five Star Hotels,* | ) | |
| *LLC d/b/a Holiday Inn Parkway East*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. A. No. 11-1078 |
| v. | ) | |
| | ) | |
| FIRE FIGHTER SALES & SERV. CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CONTI, Chief District Judge

## I.   INTRODUCTION

This memorandum opinion: (1) explains in detail why the court denied the motion for relief from judgment filed by plaintiff Insurance Company of Greater New York ("plaintiff") pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") (ECF No. 259), and concluded that Pennsylvania's "gist of the action" doctrine barred plaintiff's general negligence claim against defendant Fire Fighter Sales & Service Co. ("defendant"); and (2) addresses defendant's renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) ("Rule 50(b)"). (ECF No. 283.)

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because the parties are familiar with this case's factual context and procedural history, the court sets forth only the background information necessary to its analysis.[1]

---

[1] For a more complete factual background, see the court's revised summary judgment

Five Star Hotels, LLC ("Five Star") owned and operated the Holiday Inn Parkway East hotel (the "Hotel") in Pittsburgh, Pennsylvania. Five Star had insurance coverage for the Hotel issued by plaintiff. Five Star contracted with defendant for defendant to design and install a fire-suppression sprinkler system for use in the Hotel. After installation, certain pipes that plaintiff asserts were components of the sprinkler system froze and burst causing water damage to the Hotel. Five Star sought payments under its insurance policy from plaintiff. Plaintiff paid Five Star and became Five Star's subrogee. Plaintiff filed suit against defendant in state court alleging breach of contract and tort claims, including a claim for general negligence. On August 19, 2011, defendant removed the action from state court to this court.

On December 13, 2011, the court held a hearing with respect to defendant's motion to dismiss (ECF No. 3), filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). *See* (Text Minute Entry, 12/13/2011.) At the hearing, defendant argued, *inter alia*, plaintiff's general "negligence claim is barred by [Pennsylvania's] gist of the action doctrine" because it "arises solely from the [parties'] contract." (ECF No. 298 at 9:5–6, 19:1–2.) The court agreed with defendant and dismissed plaintiff's general negligence claim, explaining:

> [T]he gist of the action doctrine . . . preclude[s] a [p]laintiff from recovering in tort for claims that actually sound in contract.
>
> The doctrine bars tort claims[:] [1] arising solely from a contract between

opinion (ECF No. 225; *Ins. Co. of Greater N.Y.*, 2015 WL 4635137), and motion for reconsideration opinion (ECF No. 223; *Ins. Co. of Greater N.Y.*, 2015 WL 4531220), both entered July 27, 2015. In addition, see the jury trial transcripts from August 11 to 19, 2015. (ECF Nos. 290–296.)

the parties; [2] . . . where the duties allegedly breached were created and grounded in the contract itself; [3] where the liabilities stem from a contract; or [4] where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract. [*eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002).]

[P]laintiff alleges [its] tort claim does not arise solely from the contract and . . . that there is a separate social policy . . . placed on . . . [d]efendant to design and install a sprinkler system that would work in the event of a fire, thus preventing loss of life. There, however, was no authority to support the allegation that there is such an independent tort duty. . . .

[I]n [*Greenspan v. ADT Security Services Inc.*, 444 F. App'x 566 (3d Cir. 2011)], . . . there was a contract with ADT with respect to maintaining smoke detectors in the second floor of the [p]laintiff's home. The [p]laintiffs had alleged that they repeatedly called ADT, the [d]efendant, to ask when a smoke detector, which had been removed by an ADT technician because it was defective, would be replaced. And they continued to pay a monthly service charge. The [d]efendant contended . . . that it had informed the [p]laintiffs that it was difficult to fix the smoke detector because the parts were no longer available; and, in any event, the [United States Court of Appeals for the Third Circuit] noted it was undisputed that the smoke detector was never replaced and there was no functioning alarm system on the second floor of the home for over three years.

[In *Greenspan*,] there was a fire on the second floor of the [p]laintiff's residence. Because there was no smoke detector, the fire was not detected in time to prevent approximately $400,000 in damages, and there was a claim made for negligence, gross negligence, carelessness, [*etc.*], breach of warranty[,] and breach of contract. . . .

[T]he [d]istrict [c]ourt [in *Greenspan*] found that the tort claims would survive; but on appeal, . . . the [d]efendant argued . . . the gist of the action doctrine would bar such claims[,] and the [Third Circuit] Court of Appeals found in favor of the [d]efendant. The [c]ourt specifically stated:

> We know of no legal theory that would allow us to impose some objective social duty on an alarm company outside of the duties imposed by a contract, and we are unconvinced by the Greenspans' attempt to have us recognize such a duty. There is simply no separate ["tort"] duty to monitor . . . an alarm system.

> [*Greenspan*, 444 F. App'x at 571.]

> [W]hen this ["gist of the action"] issue was raised [in the instant case], [p]laintiff . . . argued that even if that were to be the case, . . . the gist of the action doctrine [does not apply] when you're dealing with specialized services or licensed professionals, citing [*Greenwood Land Co. v. Omnicare, Inc.*, No. 09-686, 2011 WL 33027 (W.D. Pa. Jan. 5, 2011)]. . . .

> [In the instant case,] there's . . . no allegation in [plaintiff's] complaint, factual allegation, that these [*i.e.*, defendant] are licensed professionals. . . .

> So . . . [the court] would need to know a little bit more about [d]efendant in the pleadings because [the court] can't—there's not enough in the complaint itself to enable the [c]ourt to make that inference [that defendant is a professionally licensed entity].

> [The court's] assessment here would be that [plaintiff's negligence] claim, . . . just looking at the face of the complaint, would not pass muster under [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),] because [the complaint does not] have enough factual allegations [for the court] to make the inference that it wouldn't be barred by the gist of the action doctrine.

(ECF No. 298 at 19:3–21, 20:2–25, 21:1–15, 21:24–25, 22:23–25, 23:1–7.) The court granted plaintiff leave to amend its negligence claim to include factual allegations about a licensed professional. *See* (Text Minute Entry, 12/13/2011.)

On January 13, 2012, plaintiff filed an amended complaint. (ECF No. 19.) On April 24, 2012, the court held a hearing with respect to defendant's second Rule 12(b)(6) motion to dismiss plaintiff's amended complaint, (ECF No. 22). *See* (Text Minute Entry, 4/24/2011.) At the hearing, the court denied defendant's motion to dismiss, but reaffirmed that plaintiff's negligence claim could proceed only as a professional negligence claim.

> [I]f you have a negligence case, it can go forward. It would have to be premised on the activities of the professional engineer. . . .

> [The court is] going to permit [plaintiff's negligence claim] to go forward, but limited to the role of the professional engineer that was involved. . . .

> [T]he negligence here has to be of a professional nature. . . .

(ECF No. 44 at 16:11–13, 18:2–4, 18:21–22); (Text Minute Entry, 4/24/2012 ("As set forth more fully on the record, the court denied [defendant's second] motion to dismiss . . . count I with respect to the professional negligence issue; plaintiff may proceed with the claim but only with regard to the negligence, if any, of the professional engineer.").

On March 13, 2013, plaintiff filed a motion to amend its complaint and a supporting brief. (ECF Nos. 68, 69.) On November 12, 2013, the court held a hearing with respect to plaintiff's motion for leave to amend the complaint. *See* (Text Minute Entry, 11/12/2013.) At the hearing, the court reiterated that Pennsylvania's "gist of the action" doctrine precluded plaintiff from asserting a general negligence claim, but granted plaintiff leave to amend its professional negligence claim. (ECF No. 98 at 6:17–19 ("The [c]ourt has previously ruled that there can be a claim of negligence, but it would be limited to . . . professional negligence. . . .").

On February 20, 2015, the court issued a memorandum opinion and order, *inter alia*, granting summary judgment in favor of defendant with respect to plaintiff's professional negligence claim. (ECF Nos. 174, 175.) In so holding, the court explained:

> [W]here a plaintiff alleges that the defendant acted negligently in the course of satisfying a contract, a court must "'examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort.'" *Smith v. Lincoln Ben. Life Co.*, No. 08-1324, 2009 WL 789900, at *20 (W.D. Pa. Mar. 23, 2009) (quoting *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999)). If the "gist of the action" is grounded in a contractual relationship, a plaintiff will ordinarily be barred from pursuing an action for negligence based on the same conduct that

formed the basis for the breach of contract claim. *USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 4343, 440 (3d Cir. 1993). The gist of the action doctrine applies to tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." *Hults v. Allstate Septic Sys., L.L.P.*, No. 06-0541, 2007 WL 2253509, at *10 (M.D. Pa. Aug. 3, 2007) (citing *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005)). The principle underlying the doctrine is that a tort action derives from "the breach of duties imposed as a matter of social policy," whereas a breach of contract action stems from "the breach of duties imposed by mutual consensus." *Redevelopment Auth. of Cambria Cnty. v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996).

In Pennsylvania, an exception to the gist of the action doctrine exists in the context of negligence claims against certain licensed professionals. *See, e.g.*, *Rapidigm v. ATM Mgmt. Serv. L.L.C.*, 63 Pa. D & C. 4th 234 (Pa. Com. Pl. 2003). In [*Rapidigm*], the court explained:

> Under settled Pennsylvania case law, a client may bring both a contract action and a tort action against a professional based on allegations that he or she failed to provide the client with professional services consistent with those expected of the profession. . . .
>
> No Pennsylvania courts have applied any of the doctrines barring tort recovery in relationships arising out of a contract (including the gist of the action doctrine), to claims involving a professional's failure to exercise the proper standard or care. . . . The application of the gist of the action . . . doctrine . . . would be inconsistent with recent case law . . . which gives a broad reading to prior case law allowing a client to bring both breach of contract and professional negligence actions based on the professional's failure to exercise proper skill and care.

*Id.* at 240–41 (citations omitted). Relying on this principle, courts have refused to apply the doctrine to professional negligence claims where "the issue is whether [d]efendants were negligent by not exercising the skill and knowledge normally possessed by members of their profession, not whether [d]efendants breached a contract that existed between the parties." *Sherman v. John Brown Ins. Agency Inc.*, No. 14-572, 2014 WL 3855023, at *8

(W.D. Pa. Aug. 5, 2014). On the other hand, where the focus of the negligence claim is simply whether the professional did something that they were contractually required to do, courts have continued to apply the doctrine. *See, e.g.*, [*Greenwood Land Co.*, 2011 WL 33027, at *4] ("The negligence claims advanced against Equis are, in reality, claims that lie within the parameters of the Services Agreement. The focus of Omnicare's claims does not implicate the skill, expertise, or special knowledge that Equis brought to bear . . . but instead rests on whether Equis did what it was contractually bound to do."); *Hults*, 2007 WL 2253509, at *10 ("In this case, the plaintiffs have failed to establish a breach of any duty imposed by social policy as opposed to mutual consensus. Their claims . . . derive from the contract entered into with Allstate. . . . Therefore, the plaintiff's claims are also barred by the gist of the action doctrine.").

The court addressed this issue at length at the oral hearing on [defendant's second] motion to dismiss [on April 24, 2012]. (ECF No. 44.) Relying on *Rapidigm*, the court permitted [plaintiff's] negligence claim to go forward, but only to the extent that it was based on the "activities" and "role of the professional engineer that was involved." (ECF No. 44 at 16, 18.) The court explained:

> [I]f it turns out that a professional engineer is not involved, is not required for these kinds of things . . . and there was no professional engineer involved, then there wouldn't be professional negligence because there was no professional involvement.
>
> [I]t might be that there's a breach of contract then because you were required to have a professional engineer involved and you didn't provide the professional engineer.

(*Id.* at 18.) The court cautioned that [plaintiff's] professional negligence claim might not survive summary judgment if it turned out that a professional engineer was never involved in the sprinkler project at all. (*Id.* at 19.)

With discovery now complete, the record clearly establishes that the only professional engineer employed by [defendant] never took any role in the design or installation of the sprinkler system at the Hotel. [(ECF No. 142-14.)] Critically, plaintiff has failed to identify any duty or obligation imposed by law, regulation, or social policy that would *require* a professional engineer to be involved in the design and installation of such a system in the absence of a contract. [(ECF No. 142-4.)] Thus, to the extent

that Five Star expected to receive professional engineering services, that
expectation derived entirely from the language in the December 15
Proposal indicating that P.E. Stamped Drawings would be provided. As
such, the gravamen of this action is not that Malady exercised his
professional skill in a manner that fell short of the standards of his
profession, but that [defendant] failed to do something that it was
contractually required to do. Under this narrow set of facts, the court
concludes that plaintiff's professional negligence claim "essentially
duplicates [its] breach of contract claim [and] is wholly dependent on the
terms of the contract." *Hults*, 2007 WL 2253509, at *10. Accordingly,
[defendant] is entitled to summary judgment with respect to this claim. . . .

With respect to [plaintiff's] professional negligence claim (Count I),
summary judgment is granted in favor of [defendant] on the basis of the
gist of the action doctrine.

(ECF No. 174 at 17–21 (emphasis in original); *see also* (ECF No. 225 (revised summary

judgment memorandum opinion setting forth the same analysis).)

On July 27, 2015, the court issued an opinion and order, *inter alia*, denying

plaintiff's motion for reconsideration of the court's grant of summary judgment in favor

of defendant with respect to its professional negligence claim. (ECF Nos. 223, 224.) In

reaching its decision, the court explained:

[In its summary judgment opinion,] [t]he court noted that, to the extent
[plaintiff] had any expectation that a professional engineer would be
involved, that expectation derived almost entirely from the purported
written contract. . . . [Plaintiff] contends that the court arrived at this
conclusion by erroneously crediting the "self-serving" testimony of
[defendant's] professional engineer, Rick Malady, to the effect that he had
taken no role in the project. . . . [Plaintiff], however, did not cite any
evidence in the record to contradict Malady's deposition testimony or cite
any policy or principle—apart from the disputed contract—that would have
required Malady to be involved. Instead, [plaintiff] reasserts the same
arguments that it raised at summary judgment in an attempt to convince the
court to change its mind.

(ECF No. 223 at 11.)

On July 31, 2015—less than two weeks before trial began—plaintiff filed a motion under Rule 60(b) ostensibly seeking relief from the court's February 20, 2015 order granting defendant summary judgment with respect to plaintiff's professional negligence claim. *See* (ECF No. 259.) In actuality, plaintiff's Rule 60(b) motion requested that the court reinstate its general negligence claim dismissed December 13, 2011. In its Rule 60(b) motion, plaintiff argued the "Pennsylvania Supreme Court recently decided *Bruno v. Erie Insurance Co.*, 106 A.3d 48 (Pa. 2014), in which, for the first time, it opined on the standard to be used in applying the gist of the action doctrine." (*Id.* at 1.) Plaintiff argued the court should reinstate its general negligence claim in light of *Bruno* because plaintiff's claim was

> based on the actions of [defendant] in *performing* contractual obligations. As such, it is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any specific executory promises which comprise the contract. Instead, the contract is merely the vehicle, or mechanism, which established the relationship between the property owner [Five Star] and [d]efendant to design and install a wet sprinkler system, during which [d]efendant's tort of negligence was committed. *See Bruno*, 106 A.3d 68. . . .

> Based on the underlying allegations supporting [p]laintiff's cause of action for negligence and applying the standard enunciated in *Bruno*, there can be no question that the actions by [d]efendant were taken in performance of contractual duties, which actions constitute a breach of a general duty of care created by law and owed to all individuals. *Bruno*, 106 A.3d at 65 (citing *Horney v. Nixon*, 61 A. 1088, 1089 (Pa. 1905)).

> Accordingly, summary judgment in favor of [d]efendant as to [p]laintiff's professional negligence claim should be vacated and [p]laintiff permitted to proceed to trial as to its causes of action for both [general] negligence and for breach of contract.

(*Id.* at 2, 5.)

9

On August 5, 2015, the court held a pretrial hearing at which the parties argued—

and the court denied—plaintiff's Rule 60(b) motion. At the hearing, the court explained:

> It's [the court's] understanding [that] what the [p]laintiff wants is to have a claim for general negligence added. That was in the original [c]omplaint. And the [c]ourt had dismissed that [at the] motion to dismiss stage because of the gist of the action [doctrine]. So technically [plaintiff's Rule 60(b) motion] goes back to the motion to dismiss [hearings on December 13, 2011 and April 24, 2012], [at] which [the court] did not permit the general negligence claim to go forward because this was founded on the breach of contract, at least as [the court] read the agreement.

> And [the court] did go back and review the transcript, and [the court] reviewed the standard [it] utilized at [the December 13, 2011 hearing]. I know that there was a decision in December of [2014] by the Pennsylvania Supreme Court, [*i.e.*, *Bruno*].

> This was really just raised [by plaintiff] on the eve of trial, this issue. [*Bruno*] has been there since December of 2014. It even predates the [February 20, 2015] summary judgment opinion that this [c]ourt issued. There was plenty of time to bring this to the [c]ourt's attention. [The court] had already ruled on this general negligence at the time of the motion[s] to dismiss [on December 13, 2011 and April 24, 2012]. It wasn't part of the motion for summary judgment.

> And as [the court has] reviewed the standard [it] applied [at the motion to dismiss hearings on December 13, 2011 and April 24, 2012], [the court does not] see any difference in the standard [it] applied versus what was applied in [*Bruno*]. . . .

> So I don't see that there was any change in the law that would have affected the decision of this [c]ourt at that time. . . .

> [A]t this stage[,] everybody's ready for trial. The witnesses are going to be here. The case is ready. We would have to stop the case. We would have to reopen it for discovery. We would have to give the [d]efendant opportunity to bring in experts. . . .

> *Bruno* reaffirmed the gist of the action doctrine. And it reaffirmed the state of the law that was referred to in the *Greenspan* decision, and it was the standard that this [c]ourt applied. The [Pennsylvania Supreme Court] in *Bruno* even acknowledged that—this is in a footnote [in *Bruno*]. . . .

Footnote 17 in the *Bruno* decision, the [Pennsylvania Supreme Court] notes, "[w]ith respect to the Superior Court's *eToll* decision, we note that, because that [c]ourt acknowledged in its opinion this source of duty distinction and incorporated it into its analysis, its consideration of whether tort and contract claims brought together in the same action are inextricably intertwined should be viewed in this context, *i.e.*, as a determination of whether the nature of the duty upon which the breach of contract claims rest is the same as that which forms the basis of the tort claims."

And that's the same here, and that's what you're telling me. The same evidence to prove the breach of contract is going to prove the negligence. It's really the same. . . . [T]he duty is the same. . . .

At this stage[,] [the court is] going to deny [plaintiff's Rule 60(b)] motion for the reasons set forth. . . .

[The court did not] use [*eToll*'s "inextricably intertwined"] concept when [it] granted the motion to dismiss with respect to [plaintiff's] general negligence claim. . . .

From [the court's] view[,] this is a breach of contract case, and that's [what has] been asserted [by plaintiff]. That's the duty that's being argued here. And [the court] could not find an independent social policy or public policy in this kind of case that wouldn't arise except for there was a contract to provide something, and the argument of [plaintiff] is it was not provided.

(ECF No. 289 at 57:4–25, 58:1–2, 58:17–19, 59:18–22, 62:4–8, 62:20–25, 63:1–8, 66:16–17, 66:23–25, 67:1–6.)

On August 19, 2015, the jury rendered a verdict in favor of defendant on plaintiff's breach of contract claim. (ECF No. 278.) After the court dismissed the jury, the court and plaintiff's counsel engaged in the following exchange concerning the denial of plaintiff's Rule 60(b) motion:

The court:         Okay. This will conclude the trial. . . . I would like to know whether you want a written opinion on the question concerning the negligence [*i.e.*, "gist of the action"] issue [raised in plaintiff's Rule 60(b) motion].

11

Plaintiff's counsel:   Yes. We do, Your Honor. . . .

The court:                Thank you.

(ECF No. 296 at 88:5–11.)

Defendant filed a Rule 50(b) renewed motion for judgment as a matter of law on September 18, 2015 and a supporting brief on October 14, 2015. (ECF Nos. 283, 288.) Plaintiff filed a response to defendant's Rule 50(b) motion on October 8, 2015 and a supporting brief on November 3, 2015. (ECF Nos. 285, 297.)

The court addresses plaintiff's Rule 60(b) motion and defendant's Rule 50(b) motion in turn below.

## III.   PLAINTIFF'S RULE 60(B) MOTION

Below, the court explains: (A) the Rule 60(b) standard; and (B) why the court denied plaintiff's Rule 60(b) motion at the August 5, 2015 pretrial hearing.

### A.   Rule 60(b) standard

Rule 60(b) provides:

(b) *Grounds for Relief from a Final Judgment, Order, or Proceeding*.

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

12

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

In its Rule 60(b) motion, plaintiff argued the court must grant it relief to "accommodate an intervening change in controlling law" pursuant to *Bruno*, to "correct a clear error of law," and to "prevent a manifest injustice." (ECF No. 259 at 1.) Because plaintiff asserts a change in the controlling law, plaintiff's request for relief from the court's order dismissing its general negligence claim falls within Rule 60(b)(6).

"Rule 60(b)(6) is a catch-all provision that authorizes [the] court to grant relief from a final judgment for 'any . . . reason' other than those listed elsewhere in [Rule 60(b)]." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014) (quoting FED. R. CIV. P. 60(b)(6)). Rule 60(b)(6) "provides 'a grand reservoir of equitable power to do justice in a particular case.'" *Id.* at 122 (quoting *Hall v. Cmty. Mental Health Ctr.*, 772 F.2d 42, 46 (3d Cir. 1985)). "The grant or denial of a Rule 60(b)(6) motion is an equitable matter left . . . to the discretion of [the] district court." *Id.* at 124. The court is, however, "to dispense [its] broad powers under [Rule] 60(b)(6) only in 'extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur.'" *Id.* at 120 (quoting *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993)). "[The] movant . . . bears the burden of establishing entitlement to [Rule 60(b)(6)] equitable relief. . . ." *Id.* at 122 (citing *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)).

The United States Court of Appeals for the Third Circuit has "consistently articulated . . . that intervening changes in the [controlling] law *rarely* justify relief from final judgments under [Rule] 60(b)(6)." *Id.* at 121 (citing *Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 311 (3d Cir. 1999) (*en banc*)) (emphasis in original); *cf. Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."). The court must employ a "flexible, multifactor approach to Rule 60(b)(6) motions . . . built upon a post-judgment change in the law . . . that takes into account all the particulars of [the] movant's case." *Id.* at 122 (citing *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 274 (3d Cir. 2002)).

Under all circumstances, "[a] motion under [Rule 60(b)(6)] must be made within a reasonable time." FED. R. CIV. P. 60(c)(1). Whether plaintiff filed its Rule 60(b)(6) motion "within a reasonable time" may be determined "by considering the interest of finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice, if any, to other parties." *Ortiz v. Pierce*, No. 08-487, 2014 WL 3909138, at *1 (D. Del. Aug. 11, 2014).

### B.    Why the court denied plaintiff's Rule 60(b) motion

The court denied plaintiff's Rule 60(b) motion at the August 5, 2015 pretrial hearing because: (1) plaintiff failed to file its Rule 60(b) motion within a reasonable time after the Pennsylvania Supreme Court issued its decision in *Bruno*; and (2) *Bruno* supports the court's reasoning in dismissing plaintiff's general negligence claim at the

motion to dismiss stage under Pennsylvania's "gist of the action" doctrine. The court explains each of these factors in turn below.

### 1. Plaintiff's Rule 60(b) motion was untimely filed.

As stated previously, a Rule 60(b)(6) motion must be filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Plaintiff challenged the court's dismissal of its general negligence claim and argued *Bruno* altered Pennsylvania's "gist of the action" doctrine for the first time on July 31, 2015—the date on which plaintiff filed its Rule 60(b) motion and less than two weeks before trial began. In its Rule 60(b) motion and supporting brief, plaintiff repeatedly characterized *Bruno* as a "recently"-decided case. (ECF No. 259 ¶¶ 1, 10, 17, 21; ECF No. 260 at 1, 3, 6, 7, 12, 14.) Contrary to plaintiff's characterization, the Pennsylvania Supreme Court issued its opinion in *Bruno* on December 15, 2014, more than seven months before plaintiff filed its Rule 60(b) motion. *Bruno*, 106 A.3d at 48 ("Decided Dec. 15, 2014.").

Plaintiff failed to present any reason for its seven-month delay in bringing *Bruno* to the court's attention, which—considering it was filed two weeks prior to trial— counseled in favor of denying plaintiff's Rule 60(b)(6) motion. *Ortiz*, 2014 WL 3909138, at *1 (considering the "reason for delay" under Rule 60(c)(1)); *Azbuko v. Bunker Hill Cmty. Coll.*, 442 F. App'x 643, 644 (3d Cir. 2011) (*per curiam*) ("[B]ecause [the plaintiff] has provided no explanation for his delay in filing, . . . he has not filed his motion within a reasonable time of the order that he seeks to challenge.").

Plaintiff did not allege or present proof of a "practical [in]ability to learn" about *Bruno* "earlier," such that plaintiff could not timely apprise the court of *Bruno*'s potential

applicability to the instant case. This factor counseled in favor of denying plaintiff's Rule 60(b)(6) motion. *Ortiz*, 2014 WL 3909138, at *1.

On March 11, 2015—almost three months after the Pennsylvania Supreme Court issued *Bruno*—plaintiff moved for reconsideration of the court's February 20, 2015 order granting summary judgment in favor of defendant with respect to plaintiff's professional negligence claim, but plaintiff did not argue *Bruno* called into question the court's dismissal of its general negligence claim in that motion. *See* (ECF Nos. 183, 184.) This factor counseled in favor of denying plaintiff's Rule 60(b)(6) motion.

Finally, granting plaintiff relief under Rule 60(b) from the court's order dismissing plaintiff's general negligence claim would have prejudiced defendant, as trial was to commence less than two weeks after plaintiff filed its Rule 60(b) motion on July 31, 2015. As the court stated at the August 5, 2015 pretrial hearing:

> [A]t this stage everybody's ready for trial. The witnesses are going to be here. The case is ready. We would have to stop the case. We would have to reopen it for discovery. We would have to give [defendant an] opportunity to bring in experts. This case is a 2011 case. It's already over three[-]years old. You know, it has to move on. And [plaintiff's Rule 60(b) motion is] just untimely and prejudicial at this stage.

(ECF No. 289 at 59:18–25.) This factor counseled in favor of denying plaintiff's Rule 60(b)(6) motion. *Ortiz*, 2014 WL 3909138, at *1.

In consideration of the "interest of finality, the reason for [plaintiff's] delay, the practical ability of [plaintiff] to learn earlier [about *Bruno*], and . . . [the] prejudice . . . to [defendant]," *Ortiz*, 2014 WL 3909138, at *1, the court concluded at the August 5, 2015 pretrial hearing that plaintiff failed to file its Rule 60(b) motion "within a reasonable

time" after the Pennsylvania Supreme Court issued its decision in *Bruno*. FED. R. CIV. P. 60(c)(1).

### 2. *Bruno* supports the court's reasoning in dismissing plaintiff's general negligence claim under Pennsylvania's "gist of the action" doctrine.

Even assuming, *arguendo*, plaintiff's Rule 60(b) motion was timely filed under Rule 60(c)(1), the Pennsylvania Supreme Court's decision in *Bruno* did not alter Pennsylvania's "gist of the action" standard such that Rule 60(b) relief was warranted in this case. *Bruno* supports this court's reasoning in dismissing plaintiff's general negligence claim at the motion to dismiss stage. Below, the court: (a) discusses *Bruno* in detail; and (b) explains why *Bruno* supports dismissal of plaintiff's general negligence claim in this action.

### a. *Bruno v. Erie Insurance Co.*

In *Bruno*, the Brunos entered into a homeowner's insurance contract with Erie Insurance Co. ("Erie"), pursuant to which Erie agreed to cover physical loss to the Bruno's property caused by mold. *Bruno*, 106 A.3d at 51. Erie's sole obligations under the insurance contract were to

> pay the cost of testing the air and any part of the covered property, . . . "to confirm the absence, presence or level of" mold "to the extent there is a reason to believe" mold was present, and, if mold was present, [the policy] obligated Erie to pay for the cost of its removal, including the cost of tearing out any part of the property needed to gain access to the mold.

*Id.*

During the process of renovating their home, the Brunos discovered mold and informed Erie. *Id.* Erie sent an adjuster and engineer to "investigate the mold problem,

determine its severity, and ascertain the extent to which remediation was required." *Id.* The Brunos requested that the adjuster "authorize payment of the policy limits—$5,000—in order to have the mold tested." *Id.* The Brunos alleged the adjuster and engineer "informed [the Brunos] that 'the mold was harmless and that they should continue tearing out the existing paneling [and] that health problems associated with mold were a media frenzy and overblown.'" *Id.* at 51–52 (quoting the Bruno's complaint).

After discovering additional mold during the renovation process, the Brunos again contacted Erie, whose engineer: (1) "visually inspected the newly-discovered areas of mold" but "did nothing else"; and (2) "performed tests of the mold" but "did not disclose those results" to the Brunos or apprise them of the "true hazard to human health posed by the mold. . . ." *Id.* at 52. In reliance on the assurances of Erie's adjuster and engineer, the Brunos continued living in their home. *Id.* The Brunos suffered severe health problems from exposure to the mold. *Id.*

The Brunos filed suit against Erie alleging negligence based upon Erie's

> "failure to recognize the nature and severity of the mold problem at the premises"; "misleading [the Brunos] concerning the nature of the mold problem in general and as it related to their health and home"; "minimizing the dangers and consequences of the mold infestation when it knew or should have known otherwise"; and the "creation or exacerbation of a dangerous condition."

*Id.* (quoting the Bruno's complaint). Erie argued—and the trial and intermediate appellate courts agreed—that Pennsylvania's "gist of the action" doctrine barred the Bruno's negligence claim, as Erie's duty to the Brunos arose solely out of the insurance contract.

*Id.* at 53.

On appeal, the Pennsylvania Supreme Court disagreed that the "gist of the action" doctrine applied and concluded the Brunos stated a claim for negligence. In *Bruno*, the court examined the history of Pennsylvania's "gist of the action" doctrine and set forth the following principles:

> [T]he substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance [to determining whether the "gist of the action" doctrine applies to bar a negligence claim]. . . . If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort. . . .

> [T]he mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract. Indeed, our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party. . . .

> Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Id.* at 68–70 (internal citations and footnotes omitted).

In applying these principles, the Pennsylvania Supreme Court considered whether the Brunos stated a claim against Erie for "breach of a contractual obligation created by

the policy of insurance, or, rather, for a breach of an independent social duty imposed by the law of torts." *Id.* at 70. In concluding the "gist of the action" doctrine did not bar the Bruno's negligence claim, the court reasoned:

> The homeowners' policy required Erie to pay up to $5,000 to the Brunos, when their home sustained a direct physical loss as the result of mold, for the cost of: (1) removing the mold, including tearing out or replacing parts of the property in order to gain access to the mold; (2) testing the air inside the property, or the property itself, to confirm the presence of mold; and (3) any increased expenses incurred by the Brunos to maintain their standard of living, if the subject property was rendered uninhabitable by the mold. **The Bruno's claim against Erie for its alleged actions, . . . quite simply, is not based on Erie's violation of any of these contractual commitments.** The Brunos do not allege that Erie failed to pay the $5,000 it was obliged to pay by the policy for the costs of testing and remediation of damage to the property, and, indeed, the parties agree that Erie did, in fact, pay the Brunos the $5,000 it owed under the policy for these purposes.

> **Instead, the Bruno's claim against Erie is predicated on the allegedly negligent actions taken by its agents on behalf of Erie *while* they were performing Erie's contractual obligation to investigate the claim made by the Brunos** under their policy in order to determine if the mold discovery triggered any of Erie's aforementioned [contractual] payment obligations. Specifically, . . . the Brunos asserted in their complaint that Erie's agents, while conducting the claim investigation, were negligent for: rendering unfounded advice to the Brunos that the mold was "harmless," denying the potential for adverse human health consequences posed by the Bruno's exposure to the mold; and telling them that they "should continue tearing out the existing paneling." The Brunos further aver that, because of this advice and recommendation, they proceeded with the removal of the basement paneling, which later led to them suffering health problems from the mold exposure, and their entire house being rendered uninhabitable such that it had to be destroyed.

> Accordingly, **while Erie had contractual obligations under its policy to investigate whether mold was present, and also to pay for all property damage caused by mold, the substance of the Bruno's allegations is not that it failed to meet these obligations**; rather, **it is that Erie, during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the Brunos**

**that they continue their renovation efforts**, which caused them to suffer physical harm because of their reasonable reliance on those assurances. Consequently, these allegations of negligence facially concern Erie's alleged breach of a general social duty, not a breach of any duty created by the insurance policy itself. The policy in this instance merely served as the vehicle which established the relationship between the Brunos and Erie, during the existence of which Erie allegedly committed a tort.

*Id.* at 70–71 (bold emphasis added, italicized emphasis in original). For these reasons, the Pennsylvania Supreme Court reversed dismissal of the Bruno's negligence claim. *Id.*

### b. *Bruno* supports dismissal of plaintiff's general negligence claim.

As discussed, the insurance contract in *Bruno* obligated Erie to *pay* for the Bruno's covered mold-related losses and inspection and testing fees, nothing more. *Bruno*, 106 A.3d at 51, 70. Erie delivered on those contractual payment obligations in full. The insurance contract did not obligate Erie's agents to make assurances of any kind to the Brunos concerning the toxicity of mold in their home, or to affirmatively recommend whether the Brunos should or should not persist in their renovation efforts. *See id.* at 70–71. Yet that is precisely what Erie's agents did in *Bruno*. Acting entirely beyond the scope of their contractual payment duties, Erie's agents made assurances to the Brunos that the mold was nontoxic and recommended they continue to renovate their home, causing injury. *Id.* Erie's agents' actions, therefore, violated an independent social (*i.e.*, tort) duty to the Brunos having nothing to do with Erie's underlying contractual duties, which contemplated only payment for mold-related losses, inspections, and testing. *Id.* Under those circumstances, the Pennsylvania Supreme Court in *Bruno* held Pennsylvania's "gist of the action" doctrine did not bar the Bruno's negligence claim.

The contract at issue in the instant case (as alleged by plaintiff) obligated

defendant to design, build, and install a fire-suppression sprinkler system in the Hotel that functioned properly and effectively in all conditions, nothing more. *See* (ECF No. 1-10 ¶ 4 (plaintiff's state court complaint); ECF No. 19 ¶¶ 8, 9, 11 (plaintiff's first amended complaint); ECF No. 97 ¶ 10 (plaintiff's second amended complaint).) Unlike *Bruno*, in which Erie fulfilled its contractual payment obligations in full, plaintiff in the instant case alleged defendant failed to deliver on its contractual obligations, with ruinous results. *See* (ECF No. 1-10 ¶ 7; ECF No. 19 ¶ 18; ECF No. 97 ¶ 20.) Unlike *Bruno*, in which the Brunos alleged Erie's agents acted negligently entirely beyond the scope of their contractual payment duties, plaintiff in the instant case did not allege defendant violated an independent social duty entirely beyond the scope of its contractual duty to provide an effective fire-suppression sprinkler system. Defendant's negligent acts and omissions (as alleged by plaintiff) inevitably led the court back to the factual core of plaintiff's breach of contract claim—*i.e.*, that defendant failed to deliver on its contractual promise to design, build, and install an effective, functioning fire-suppression sprinkler system in the Hotel.[2] For these reasons, the court concluded *Bruno* supports dismissal of plaintiff's

---

[2] By way of example, the following allegations—ostensibly pleaded in support of plaintiff's general negligence claim—inevitably led the court back to the factual predicate of plaintiff's breach of contract claim, *i.e.*, that defendant failed to honor its obligation to deliver an effective, functioning fire-suppression sprinkler system for use in the Hotel:

- "Defendant owed a duty . . . to use reasonable care in performing the design, upgrade, retrofit, construction and/or installation of the wet fire suppression system and to ensure that no damage would be caused to the building or common elements [of the Hotel]." (ECF No. 1-10 ¶ 12.)

- "[Defendant] failed to properly analyze, design, install[,] and test the fire suppression system in spite of having a duty to ensure the system would work [at

general negligence claim at the motion to dismiss stage.

In addition, the court concluded plaintiff read *Bruno* too broadly in asserting that Pennsylvania's "gist of the action" doctrine does not bar a negligence claim predicated on the negligent acts or omissions of a defendant "in *performing* contractual obligations." (ECF No. 295 at 2 (emphasis in original).) While *Bruno* notes that "a party to a contract may be found liable in tort for negligently performing contractual obligations," *Bruno*, 106 A.3d at 70, the Pennsylvania Supreme Court did not apply this principle to the facts alleged by the Brunos. The Brunos did not allege Erie performed its contractual payment obligations negligently; rather, they alleged Erie's agents acted negligently entirely beyond the scope of Erie's contractual payment obligations. *Id.* Consequently, the Pennsylvania Supreme Court's broad pronouncement is *dictum*. *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013) ("If a determination by [a court] is not necessary to [its] ultimate holding, 'it properly is classified as *dictum*.'" (quoting *Calhoun v. Yamaha*

---

the Hotel] during freezing temperatures common in Pittsburgh, Pennsylvania." (ECF No. 19 ¶ 27.)

- "The flood [and resulting damages] at [the Hotel] . . . were proximately caused by the negligence [and] carelessness [of defendant] in: . . . [c.] [n]egligent supervision of its employees in the sale, design and/or installation of the automatic sprinkler system; . . . [e.] [f]ailing to conduct a hazard and risk analysis; . . . [g.] [f]ailing to assess and design a water-based fire suppression system including automatic sprinkler systems; . . . [q.] [i]mproperly designing and installing an automatic fire sprinkler system in such a way as to expose it to and/or fail to prevent it from being exposed to freezing temperatures; . . . [aa.] [f]ailing to consider and/or incorporate freeze protections in the design and installation of the automatic fire sprinkler system; [bb.] [f]ailing to insulate or apply freeze protection to the unheated aspects of the automatic fire sprinkler system; . . . [and] [dd.] [f]ailing to test the fire suppression system and all component parts to ensure it would function throughout the building in freezing temperatures. . . ." (ECF No. 97 ¶ 27.)

23

*Motor Corp., U.S.A.*, 216 F.3d 338, 343 n.9 (3d Cir. 2000))). As the court in *Bruno* clarified:

> [W]hile Erie had contractual obligations . . . to investigate whether mold was present [and] . . . to pay for all property damage caused by mold, *the substance of the Brunos allegations is not that it failed to meet these obligations*; rather, it is that Erie, *during the course of **fulfilling** these* [*contractual*] *obligations*, . . . acted in a negligent manner *by making false assurances* regarding the toxicity of the mold and *affirmatively recommending* . . . that the Brunos continue their renovation efforts. . . .

*Id.* at 71 (emphasis added).

In the instant case, plaintiff did not allege defendant was negligent for acts or omissions occurring apart from—but "during the course of *fulfilling*" (*i.e.*, satisfying)— its contractual obligation, as contemplated in *Bruno*. *Id.* (emphasis added). Plaintiff's argument was that defendant was negligent *because it did not fulfill its contractual obligation* to design, build, and install an effective, functioning sprinkler system in the Hotel. Plaintiff's argument, therefore, went beyond the narrow holding in *Bruno*. Under plaintiff's broad reading of *Bruno*, negligent performance of a duty defined by contract would create a cause of action for negligence *and* breach of contract in every instance, thus eviscerating the "gist of the action" doctrine's purpose to "maintain the conceptual distinction between breach of contract claims and tort claims." *eToll, Inc.*, 811 A.2d at 14. This court found it unreasonable to read *Bruno* so broadly, particularly in light of the Third Circuit Court of Appeals' stringent standard that "intervening changes in the [controlling] law *rarely* justify relief from final judgments under [Rule] 60(b)(6)." *Cox*, 757 F.3d at 121 (emphasis in original).

Finally, the court concluded that *Bruno* affirmed that the Pennsylvania Superior Court's test and analysis in *eToll, Inc.*, 811 A.2d 10—*i.e.*, the test this court applied in dismissing plaintiff's general negligence claim at the motion to dismiss stage, *see* (ECF No. 298)—remains viable after *Bruno*. In *Bruno*, the Pennsylvania Supreme Court clarified that *eToll* incorporated the "duty-based demarcation" standard into its analysis, meaning *eToll*'s "inextricably intertwined" test should be read as asking "whether the nature of the duty upon which the breach of contract claims rest is the same as that which forms the basis of the tort claims." *Bruno*, 106 A.3d at 69 n.17. The court applied this duty-based "gist of the action" standard in dismissing plaintiff's general negligence claim at the motion to dismiss stage and did not rely upon any other reading of *eToll*'s "inextricably intertwined" test. *See* (ECF No. 298.)

Contrary to plaintiff's assertions, the contract at issue in this case was far more than "merely the vehicle, or mechanism, [that] established the relationship between [Five Star] and defendant to design and install a wet sprinkler system, during which [d]efendant's [alleged] tort of negligence was committed." (ECF No. 295 at 2.) In this case, it was the contract—not the law of torts—that created the sole duty plaintiff alleged defendant violated—*i.e.*, the duty to design, build, and install an effective, functioning fire-suppression sprinkler system for use in the Hotel. For these reasons, the court concluded *Bruno* supports dismissal of plaintiff's general negligence claim under Pennsylvania's "gist of the action" doctrine.

In sum, because the court concluded that plaintiff's Rule 60(b) motion was untimely filed and that *Bruno* supports dismissal of plaintiff's general negligence claim, the court denied plaintiff's Rule 60(b) motion at the August 5, 2015 pretrial hearing.

## IV.    DEFENDANT'S RULE 50(B) MOTION

As stated previously, defendant filed a Rule 50(b) renewed motion for judgment as a matter of law (ECF No. 283) after the jury returned a verdict in its favor. In its Rule 50(b) motion, defendant argued that "to the extent [the court] considers any [m]otion by [plaintiff] that calls the [j]ury's [v]erdict into question, [defendant] now files this [Rule 50(b) motion]." (ECF No. 283 ¶ 11.)

The court will deny defendant's Rule 50(b) motion as moot because: (1) the court denied plaintiff's Rule 60(b) motion; (2) plaintiff did not file post-trial motions challenging the jury's verdict in favor of defendant; and (3) plaintiff filed a notice of appeal in the United States Court of Appeals for the Third Circuit (docket number 15-3291) on September 18, 2015.

## V.    CONCLUSION

For the reasons explained in greater detail in this memorandum opinion, the court denied plaintiff's Rule 60(b) motion at the August 5, 2015 pretrial hearing. As the court entered an appropriate order denying plaintiff's Rule 60(b) motion after the August 5, 2015 hearing, an order to that effect accompanying this memorandum opinion is unnecessary.

For the reasons set forth in this memorandum opinion, the court will deny defendant's Rule 50(b) motion. An appropriate order to that effect will follow.

DATED:                    December 8, 2015

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge